HENRY AUSTIN            :        CASE NUMBER 3;02CV# 192 (RNC)

V.                     :

JEFFERY FISHIER ET,AL   :

United States District Court
District of Connecticut
FILED AT      BRIDGEFORT
_December 6_        20 04
1 wvin F. Hoyw, Clark
By. Mary E. Larsen
Deputy Clerk

MOTION TO REOPEN

I,HENRY AUSTIN ,THE PETITIONER MOVES THIS HONORABLE COURT  TO REOPEN THE
ABOVE MENTION CASE.

I BELIEVE THAT I HAVE EXAUSTED ALL MY STASTE REMEDIES, AFTER  NOT HAVING
THE FUNDS TO PROCEED WITH AN APPEAL OR CERT TO THE STATE SUPRUME COURT.

THERE IS NEW EVIDENCE TO PROVE THAT MY CONVICTION WAS A CONSPIRIED
CONVICTION OBTAINED BY PERJURY,PREJUDICE,FRAUD,AND OTHER CORRUPT
MEANS. THIS NEW EVIDENCE WILL PROVE  I COMMITTED A STATUS ONE
MISDERMEANOR, NOT STATUS THREE FELONY CRIMES, IN WHICH I WAS CHARGED
WITH AND CONVICTED OF, THAT LED TO FIFTY-TWO MONTHS OF UNLAWFUL
IMPRISONMENT.

GRANTING THIS MOTION IS ENSSENTIAL TO THE EYES OF JUSTICE TO MAKE AN
INJUSTICE JUST.

RESPECTFULLY SUBMITTED

BY _Henry C Austin_

HENRY C AUSTIN
PRO-SE
79 SOUTH ST 2ND FL
WATERBURY CT 06706

# INCIDENT AND OFFENSE REPORT

## WATERBURY POLICE DEPARTMENT

| 1. COMPLAINT NUMBER |
|---|
| 97-315 30 |

| 2. FILE NUMBER | 3. STATUS | 4. OFF. I.D. | 5 DATE OPENED | 6. DATE CLEARED | 7. INCIDENT OR OFFENSE |
|---|---|---|---|---|---|
| | 1 | 494 | 4/19/97 | / / | Dispute |

| 8. MAJ. CD. | 9. NAME OF PLACE, BUSINESS OR FIRM | 10. ADDRESS OF OCCURENCE |
|---|---|---|
| 24 | | 64 Fairmount St 3rd R |

| 11. LOC. CD. | 12. DAY OF WK. | 13. DATE OF OCCURENCE | 14. TIME | 15. WEATHER | 16. OBJECT OF ATTACK |
|---|---|---|---|---|---|
| | SA | 4/19/97 | 0255 | R | Female, White |

| 17. WEAP., TOOL, MEANS OF ATTACK OR ENTRY | 18. POINT OF ENTRY | 19. METHOD OF ATTACK |
|---|---|---|
| Other | Other | Other |

**VICTIM:**

| 20. AGE | 21. SEX | 22. RACE | 23. VICTIM'S NAME | 24. VICTIM'S ADDRESS |
|---|---|---|---|---|
| | | | LAST        FIRST        M. | |
| | | | LAST        FIRST        M. | |
| | | | LAST        FIRST        M. | |

| 25. COMPLAINANT'S NAME | 26. COMPLAINANT'S ADDRESS | 27. PHONE |
|---|---|---|
| LAST ▇▇▇▇  FIRST ▇▇▇▇  M. ▇ | | ▇▇▇▇ |

| 28. DESCRIPTION OF PLACE | 29. NATURE OF LARCENY |
|---|---|
| | |

| 30. EST. VALUE OR TYPE OF STO... PROP. | CURRENCY | JEWELRY | FUR/CLOTH. | OFFICE EQUIP. | TV/RADIO | FIREARM | MISC. | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| 31. OTHER OFFICERS AT SCENE | 32. WITNESSES: | | 33. ADDRESS | 34. PHONE |
|---|---|---|---|---|
| Caron, G | LAST        FIRST        M. | | | |
| | LAST        FIRST        M. | | | |
| | LAST        FIRST        M. | | | |
| | LAST        FIRST        M. | | | |

| 35. PERSONS ARRESTED – NAME | 36. ADDRESS | 37. CHARGE |
|---|---|---|
| LAST        FIRST        M. | | |
| LAST        FIRST        M. | | |
| LAST        FIRST        M. | | |
| LAST        FIRST        M. | | |
| LAST        FIRST        M. | | |
| LAST        FIRST        M. | | |
| LAST        FIRST        M. | | |

WATERBURY POLICE DEPARTMENT
THE USE OF THIS INFORMATION IS REGULATED BY LAW
DO NOT DISSEMINATE
NOT VERIFIED BY FINGERPRINTS

| 39. OFFICER REPORTING    SIGNATURE | 38. POST/BEAT | 40. DATE OF REPORT | 41. COMP. OPER. |
|---|---|---|---|
| R. Caruso | A1 | 4/19/97 | |

important information as to why or how the incident etc.
evict ⁣ ⁣: include serial numbers of property ⁣ ⁣ ⁣ailable, vehicles ⁣ ⁣ if a
any suspects, etc.

Dispatched to 64 Fairmount St 3rd R on a disturbance. Upon arrival, ████████ stated that she let a black male with a moustache and short hair into her home because he had some liquor with him. Once inside and the liquor was gone the male made sexual advances which she did not accept. ████████ stated that the male became upset and violent. ████████ stated that the male shoved her into the bathroom window breaking it. ████████ then broke the storm window and climbed out to escape the male. She went to a neighbors to call the police. She suffered a laceration to her left arm and was transported to St. Mary's Hospital by ambulance.

████████ stated that she does not know the male's name but knows him from the neighborhood. She was advised to apply for a warrant at the detective bureau if she found out who the male is.

We checked ████████ apartment and did not locate the male party.

| 43. FOR FURTHER INVESTIGATION: | | | | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE | |
| --- | --- | --- | --- | --- | --- |
| DETECTIVE | YOUTH | V&I | OTHER, EXPLAIN | 44. SUPERVISOR APPROVING | 43. DATE |
| ☑ | ☐ | ☐ | ☐ | *Angell* | 4/19 97 |

ARREST WARRANT APPLICATION
JD-CR-64   Rev. 10-93
PR. BK. 593, 593A, 594
GEN. STAT. 54-2a

**STATE OF CONNECTICUT**
SUPERIOR COURT

97-31530

| FOR COURT USE ONLY |
|---|
| Supporting Affidavits Sealed |
| ☐ YES   ☐ NO |

| NAME AND RESIDENCE (Town) OF ACCUSED | | COURT TO BE HELD AT (Town) | G.A. NO. |
|---|---|---|---|
| HENRY C. AUSTIN   197 ALLEN ST. WATERBURY CT. | | WATERBURY | 4 |

07/10/69

**APPLICATION FOR ARREST WARRANT**

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the . . .
☐ affidavit below . . .  ☒ affidavit(s) attached.

| DATE & SIGNATURE | DATE  5-6-97 | SIGNED (Prosecutorial Official)  T L Klatt |
|---|---|---|

**PAGE NO. 1**

**AFFIDAVIT**

The undersigned, being duly sworn, deposes and says:

1.  THAT THE AFFIANT, DETECTIVE JEFFERY FISHER IS A REGULAR MEMBER OF THE WATERBURY POLICE DEPARTMENT HAVING OVER ELEVEN YEARS OF TRAINING AND EXPERIENCE. THAT THE AFFIANT IS PRESENTLY ASSIGNED TO THE CRIMINAL INVESTIGATION DIVISION AND HAS CONDUCTED NUMEROUS CRIMINAL INVESTIGATIONS THAT HAVE LED TO BOTH ARREST AND CONVICTIONS DO SAY THAT:

2.  THAT ON 04/19/97 THE WATERBURY POLICE DEPARTMENT RECEIVED A VALID COMPLAINT OF A DISPUTE THAT OCCURED AT 64 FAIRMOUNT ST WATERBURY CT. THE RESPONDING OFFICER, OFFICER CARUSO, REPORTED THAT THE COMPLAINTANT/VICTIM ETHEL PETERSON OF 64 FAIRMOUNT ST. WATERBURY CT. ALLOWED A BLACK MALE WITH SHORT HAIR AND A MUSTACHE INTO HER APARTMENT BECAUSE HE HAD BOOZE. THAT ONCE INSIDE THE APARTMENT AND THE LIQUOR WAS GONE THE BLACK MALE MADE SEXUAL ADVANCES TOWARD PETERSON WHICH SHE DID NOT ACCEPT. THAT THE BLACK MALE BECAME UPSET AND VIOLENT AND SHOVED PETERSON INTO THE BATHROOM WINDOW BREAKING THE GLASS. THAT PETERSON THEN BROKE THE STORM WINDOW OUT AND CLIMBED OUT THE BATHROOM WINDOW AND WENT TO A NEIGHBORS TO CALL THE POLICE. THAT PETERSON SUSTAINED LACERATIONS TO HER LEFT ARM AND WAS TRANSPORTED BY AMBULANCE TO ST'MARYS HOSPITAL FOR TREATMENT. THAT THE APARTMENT WAS SEARCHED AND THE BLACK MALE WAS NOT FOUND.

3.  THAT ON 04/19/97 AT 0308 HOURS THE WATERBURY POLICE DEPARTMENT RECEIVED A VALID COMPLAINT ( 97-31535 ) OF DISTURBANCE THAT OCCURED AT 197 ALLEN ST. WATERBURY CT. THE RESPONDING OFFICER REPORTED THAT THE COMPLAINTANT, YOLANDA MOFFETT OF 197 ALLEN ST. WATERBURY CT., STATED THAT HER BROTHER HENRY AUSTIN ARRIVED HOME INTOXICATED AND BEGAN TO THREATEN HER. THAT AUSTIN CAME HOME HOLDING AN EMPTY BOTTLE OF CAPTAINS MORGAN RUM. THAT AUSTIN STATED HE HAD ALREADY KILLED SOMEONE TONIGHT AND THEN SHOWED MOFFET SOME BLOOD ON HIS FINGERS. THAT MOFFET REPORTED THAT SHE HELD A RESTRAINING ORDER FOR HER BROTHER. THIS AFFIANT CONTACTED MOFFET AND SHE STATED THAT SHE DID NOT WANT TO PERSUE THIS ISSUE.

| DATE & SIGNATURE | DATE  4/28/97 | SIGNED (Affiant)  Detective |
|---|---|---|
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date)  4/28/97 | SIGNED (Judge, Clerk, Asst. Clerk, Notary Pub.)  Sgt. D. Qam #351 |

**FINDING**

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE & SIGNATURE | DATE  5/14/97 | SIGNED (A Judge of the Superior Court) |
|---|---|---|
| | | (OVER) |

ST WARRANT APPLICATION
.R-64   Rev. '10-93
. BK. 593, 593A, 594
GEN. STAT. 54-2a

**STATE OF CONNECTICUT**
SUPERIOR COURT

97-31530

| FOR COURT USE ONLY |
| --- |
| Supporting Affidavits Sealed |
| ☐ YES    ☐ NO |

| NAME AND RESIDENCE (Town) OF ACCUSED | COURT TO BE HELD AT (Town) | G.A. NO. |
| --- | --- | --- |
| HENRY C. AUSTIN     197 ALLEN ST. WATERBURY CT. | WATERBURY | 4 |

07/10/69

**APPLICATION FOR ARREST WARRANT**

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the . . .

☐ affidavit below . . .   ☒ affidavit(s) attached.

| DATE & SIGNATURE | DATE 5-6-97 | SIGNED (Prosecutorial Official) F L Klatt |
| --- | --- | --- |

### PAGE NO. 2          AFFIDAVIT

The undersigned, being duly sworn, deposes and says:

4.     THAT ON 04/22/97 ETHEL PETERSON CAME TO THE WATERBURY POLICE DEPARTMENT AND GAVE THIS AFFIANT A SWORN WRITTEN VOLUNTARY STATEMENT IN WHICH PETERSON STATED THE FOLLWING.   THAT SHE RESIDES AT 64 FAIRMOUNT ST. THIRD FLOOR NORTH SIDE APARTMENT WATERBURY CT.   THAT SHE HAS KNOWN A BLACK MALE WHO USES THE NAME OF HANK FOR ABOUT ONE MONTH.   THAT ON 04/19/97 AT ABOUT 1:40 IN THE MORNING SHE WAS AWAKENED BY SOMEONE KNOCKING AT HER APARTMENT DOOR.   THAT SHE ANSWERED THE DOOR AND THE BLACK MALE KNOWN TO HER AS HANK WAS STANDING THERE. THAT HANK WAS HOLDING AN EMPTY BOTTLE OF CAPTAIN MORGAN RUM.   THAT SHE TOLD HANK THAT SHE DID NOT WANT ANY COMPANY.   THAT HANK PUSHED HIS WAY INTO THE APARTMEWNT.   THAT ONCE INSIDE THE APARTMENT HANK GRABBED HER BY THE THROAT AND STATED THAT "WHO DO YOU THINK YOU ARE PUSHING A RETARDED BOY DOWN.   WHAT DO YOU THINK YOUR BAD?   I'LL KICK YOUR ASS. "   THAT SHE TOLD HANK THAT HE HAD TO LEAVE.   THAT HE DID NOT LEAVE.   THAT HE THEN GRABBED HER BY THE NECK. THAT SHE ASKED HIM TO LET HER GO BUT HE REFUSED.   THAT HE THEN PUSHED HER UP AGAINST THE BATHROOM WINDOW.   THAT THE WINDOW BROKE.   THAT HANK THEN REACHED INTO HIS BACK POCKET.   THAT SHE THOUGHT HE WAS GOING FOR A KNIFE.   THAT SHE PUSHED THE REST OF THE GLASS OUT OF THE WINDOW WITH HER ARMS.   THAT SHE ATTEMPTED TO CLIMB OUT OF THE WINDOW AND THAT HANK ATTEMPTED TO PULL HER BACK INTO THE BATHROOM.   THAT SHE WAS ABLE TO CLIMB OUT OF THE WINDOW AND WENT TO HER NEIGHBORS APARTMENT WHERE AN AMBULANCE WAS CALLED.   THAT THE POLICE CHECKED HER APARTMENT AND HANK WAS NOT FOUND NOR WAS THE EMPTY BOTTLE OF CAPTAIN MORGANS RUM.   THAT SHE RECEIVED LACERATIONS TO HER LEFT AND RIGHT WRIST THAT HAD TO BE CLOSED WITH STITCHES WHILE RECEIVING TREATMENT AT ST'MARYS HOSPITAL.   THAT SHE ALSO SUSTAINED BRUISES TO LEFT THIGH AREA AND FELT VERY SORE IN THE AREA OF HER NECK AND BACK.   THAT DETECTIVE FISHER SHOWED HER EIGHT PHOTOGRAPHS OF BLACK MALES.   THAT THE PHOTOGRAPH OF THE BLACK MALE LOCATED IN PHOTO NUMBER SIX WAS THAT OF THE MAN KNOWN TO HER AS HANK AND IS THE MAN THAT ASSAULTED HER.   THAT SHE SIGNED AND DATED THE BACK OF THE PHOTOGRAPH.

| DATE & SIGNATURE | DATE 4/28/97 | SIGNED (Affiant) Detective M_____ #359 |
| --- | --- | --- |
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date) 4/28/97 | SIGNED (Judge, Clerk, Comm., or Notary Pub.) Sgt _____ #351 |

### FINDING

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE & SIGNATURE | DATE 5/14/97 | SIGNED (A Judge of the Superior Court) _____ |
| --- | --- | --- |

(OVER)

ARREST WARRANT APPLICATION    STATE OF CONNECTICUT    FOR COURT USE ONLY

JD-CR-64    Rev. 10-93
PR. BK. 593, 593A, 594
GEN. STAT. 54-2a

SUPERIOR COURT

Supporting Affidavits Sealed
☐ YES    ☐ NO

97-31530

| NAME AND RESIDENCE (Town) OF ACCUSED | COURT TO BE HELD AT (Town) | G.A. NO |
|---|---|---|
| HENRY C. AUSTIN    197 ALLEN ST. WATERBURY CT. | WATERBURY | 4 |

07/10/69    APPLICATION FOR ARREST WARRANT

TO: A Judge of the Superior Court

The undersigned hereby applies for a warrant for the arrest of the above-named accused on the basis of the facts set forth in the

☐ affidavit below . . __X__☐ affidavit(s) attached.

| DATE & SIGNATURE | DATE | SIGNED (Prosecutorial Official) |
|---|---|---|
| | | |

PAGE NO. 3    AFFIDAVIT

The undersigned, being duly sworn, deposes and says:

5.    THAT THIS AFFIANT CONTACTED A KNOWN AND RELIABLE CONFIDENTIAL INFORFANT IN REGARDS TO THE IDENTIFICATION OF THE BLACK MALE KNOWN AS HANK. THAT THE CONFIDENTIAL INFORMANT STATED THAT HANK IS HENRY AUSTIN.

6.    THAT THIS AFFIANT SUBMITTED THE PHOTOGRAPHIC ARRAY SHOWN ▓▓▓▓▓ AS EVIDENCE. THAT THE PHOTOGRAPH IDENTIFIED ▓▓▓▓▓ WAS THAT OF HENRY C. AUSTIN D.O.B. 07/10/69 OF 197 ALLEN ST. WATERBURY CT.

7.    THAT THIS AFFIANT BELIEVES THAT PROBABLE CAUSE HAS BEEN ESTABLISHED TO SHOW THAT HENRY C. AUSTIN, D. O. B. 07/10/69, OF 197 ALLEN ST. WATERBURY CT. DID COMMIT THE CRIMES OF UNLAWFUL RESTRAINT IN THE FIRST DEGREE IN VIOLATION OF CONNECTICUT GENERAL STATUTE 53a-95, BURGLARY IN THE SECOND DEGREE IN VIOLATION OF CONNECTICUT GENERAL STATUTE 53a-102, CRIMINAL TRESPASS IN THE FIRST DEGREE IN VIOLATION OF CONNECTICUT GENERAL STATUTE 53a-107 AND ASSAULT IN THE THIRD DEGREE IN VIOLATION OF CONNECTICUT GENERAL STATUTE 53a-61 AND RESPECTFULLY REQUEST THAT AN ARREST WARRANT BE ISSUED.

| DATE & SIGNATURE | DATE 4/28/97 | SIGNED (Affiant) DETECTIVE ▓▓▓ |
|---|---|---|
| JURAT | SUBSCRIBED AND SWORN TO BEFORE ME ON (Date) 4/28/97 | SIGNED (Judge, Clerk, Asst. Clerk, Notary Pub.) Sgt. ▓▓▓ #351 |

FINDING

The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavit(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused.

| DATE & SIGNATURE | DATE | SIGNED (A Judge of the Superior Court) |
|---|---|---|
| | | |

(OVER)    No Signature

NO. CV98 0002823 S     :   SUPERIOR COURT

HENRY AUSTIN      :   JUDICIAL DISTRICT OF ROCKVILLE

VS.           :   AT SOMERS

WARDEN        :   NOVEMBER 24, 2003

## MEMORANDUM OF DECISION

The petitioner in the above-entitled habeas corpus action, Henry Austin, filed a three count

amended petition, dated September 15, 2003, in which he alleges ineffective assistance of trial

counsel in count one[1], failure of trial counsel to except to certain alleged improper jury instructions

in count two[2] and violation of his federal and state constitutional due process rights in count three.

---

[1]

The petitioner's specific claims of ineffectiveness are included in paragraphs 11-34 of count one of the petition. The claims, which largely overlap each other, substantially assert that trial counsel failed to investigate the state's factual allegations and the evidence supporting the defense; failed to advised the petitioner regarding plea negotiations; failed to become familiar with the applicable law and explain the range of potential criminal penalties to the petitioner; failed to file "certain motions" during the proceedings and failed to file a "motion to dismiss" at the end of the state's case; failed to attempt to impeach the state's witnesses, including the victim; failed to prepare the petitioner and another defense witness to testify; failed to correct an inaccuracies specified in his pre-sentence investigation report and failed file a motion for sentence review on the petitioner's behalf pursuant to General Statutes Section 51-195.

[2]

The petitioner claims that trial counsel failed to except, pursuant to Practice Book Section 42-16, to the trial court's failure to give a specific unanimity instruction regarding the elements of second degree burglary and failed to except to the trial court's use of allegedly prejudicial language in its charge on presumption of innocence. Practice Book Section 42-16 states that "[a]n appellate court shall not be bound to consider error as to the giving of . . . an instruction

The respondent Warden denied the petitioner's allegations. This court presided at the habeas trail held on October 29, 2003 and the parties submitted briefs in support of their respective claims. After reviewing the evidence and considering the applicable law, the court dismisses each count of the amended petition for the reasons outlined in this memorandum.

I

FACTS

The petitioner was convicted by a jury of unlawful restraint in the first degree, burglary in the second degree, criminal trespass in the first degree and assault in the third degree and sentenced by the court, *Carroll, J.*, to a total effective sentence of ten years suspended after six years to serve, followed by three years of probation. The petitioner appealed his conviction, but his appeal was denied in State v. Austin, 59 Conn. App. 305, cert denied, 255 Conn. 219 (2000). The Appellate Court stated that the jury could have reasonably found the following facts. "At about 1:40 a.m. on April 19, 1997, the [petitioner], who was somewhat intoxicated at the time, went to the victim's home in Waterbury. When the victim opened the door slightly, she recognized the [petitioner] as a man that she knew only as "Hank" whom she had met at a friend's home a month before. After the victim rejected the [petitioner]'s request to enter her apartment, the [petitioner] forced his way into the apartment. Once inside, the [petitioner] forcefully put both of his hands on the victim's neck and berated her for "pushing a retarded boy down" and told her that he would "kick her ass."  A struggle

---

unless the matter is covered by a written request to charge or exception has been taken by the party appealing . . ."

2

ensued in which the victim tried to push the [petitioner] out of her apartment. She failed to do so and retreated to the kitchen, where the back door was located. She told the [petitioner] to leave, but he refused. The [petitioner] had cut one of his fingers on the victim's earring when he grabbed her by the neck and was very upset about that. To calm him, the victim offered to bandage the cut. They went into the bathroom for that purpose, but once they were inside the bathroom the [petitioner] shut the door and again began choking the victim. The [petitioner] pushed the victim against the bathroom window with such force that the window broke and the victim sustained a serious cut. After more struggling with the [petitioner], the victim managed to escape through the bathroom window. She then ran to a neighbor's home where she called 911.

The [petitioner] was subsequently arrested and convicted of [the crimes charged].   On appeal he claim[ed] that the court improperly failed to instruct the jury, sua sponte, that to convict him of burglary in the second degree it had to find unanimously that he either unlawfully entered the victim's apartment or unlawfully remained therein. Additionally, he assert[ed] that the court improperly instructed the jury that the law was made to protect the innocent and not the guilty, thereby eroding the presumption of innocence. He claim[ed] that the failure of the court to give the specific unanimity instruction, combined with the improper instruction on the presumption of innocence, deprived him of a fair trial. Id., 306-307.

Based on the credible evidence produced at the habeas trial, the court finds the following facts.  The petitioner was arrested pursuant to a warrant in connection with the criminal conduct underlying his convictions.  Prior to the criminal trial, the petitioner retained Attorney David Labriola and the two met on several occasions and discussed the state's factual allegations against

3

the petitioner as well as the petitioner's defense. The petitioner denied that the incident occurred at 1:30 a.m. on April 19, 1997 as claimed by the victim, Ethel Peterson. He instead asserted that he was in the victim's home at approximately 10:30 p.m. on April 18 and that he injured her in when she attacked him without provocation. He told Labriola that at 1:30 a.m. on April 19 he was in a bar called "Daggle's" near the attorney's office. The petitioner also told Labriola that two witnesses, Steven Dwyer and Virginia Vezina, would testify in support of his claim that he was not with the victim at the time she claimed the crime occurred. The petitioner did not, however, mention the names of witnesses who were present in the bar when he claimed he was there. In essence, the petitioner agreed that he had been involved in an altercation with the victim in her home, but denied it occurred at the time she claimed it did and denied that he had committed any crime other than a misdemeanor assault.

In preparing to go to trial, Labriola interviewed Dwyer and Vezina, reviewed the arrest warrant affidavit, police reports and witnesses' statements in the state's file, including the statement of the victim, and familiarized himself with the law applicable to the petitioner's charges. Labriola viewed the central issue in the case to be whether the jury would find the petitioner or the victim to be more credible. He viewed the time of the incident to be relatively unimportant. Labriola did not employ an investigator because the petitioner and the victim, the only persons present during the incident, agreed that an incident had occurred between them but disagreed about whether the petitioner's conduct was criminal.

Labriola told the petitioner the range of penalties for the crime with which he was charged and talked to him about his option to testify. During the course of the petitioner's multiple pre-trial

4

court appearances, Labriola offered the state a misdemeanor plea from the petitioner in exchange for a completely suspended sentence, but the state rejected the offer and insisted that any negotiated plea must involve jail time.  Since the petitioner was unwilling to accept any jail offer, the case proceeded to trial without any further plea negotiations.

At trial Labriola cross-examined the victim about her alcohol and drug use, her purported request for money from the petitioner and her alleged inconsistent statements to the police. At one point during the cross-examination, the  victim admitted her drug use and counsel then asked her if it "was her style to get high."  Based on counsel's  remark, the state moved for a mistrial.   The court denied the motion, finding insufficient prejudice to grant the motion, but did order the remark stricken and directed the jury to disregard it.   After the victim testified, counsel learned that the victim was convicted of a third degree assault subsequent to the petitioner's criminal trial.

Labriola  called Vezina to testify as a defense witness at the petitioner's request, notwithstanding the fact that Labriola did not consider her testimony helpful. Labriola did not call Dwyer to testify, however,  because Dwyer told counsel that the petitioner had been drinking and was in possession of a bottle of rum at about the time of the April 19 incident.  Both the victim and Yolanda Moffett, the petitioner's sister, testified at trial that the petitioner was somewhat intoxicated and in possession of a liquor bottle near the time of the alleged crime.   Labriola did not make a motion for judgment of acquittal after the state's case-in-chief or at the end of the entire evidence.

Trial counsel reviewed the petitioner's presentence investigation report (psi) with the petitioner prior to the May 8, 1997 sentencing and  called three character witnesses suggested by

5

the petitioner to speak on his behalf at the sentencing. The petitioner never told Labriola that the petitioner believed the psi erroneously indicated that he had been convicted of possession of narcotics in Bridgeport. Further, when Judge Carroll questioned one of the character witnesses at the sentencing regarding the witness' knowledge of the drug conviction, the petitioner, who later spoke on his own behalf, said nothing to correct the alleged psi error. At the time of the sentencing, Labriola discussed with the petitioner the latter's right to apply for sentence review and supplied him with a sentence review application. The petitioner failed to submit the sentence review application in a timely manner. Additional facts will be referenced as necessary.

II

DISCUSSION

A.

The petitioner claims that his criminal trial attorney was ineffective because he failed to investigate the state's evidence; failed to prepare the petitioner and Vezina as defense witnesses; failed to file a motion to dismiss based on a purported lack of probable cause in the arrest warrant and failed to file a motion for judgment of acquittal. These claims are without merit.

The standard of review for claims of ineffective assistance of counsel is well established. "First, the [petitioner] must show that counsel's performance was deficient . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 CT Page 6983

6

L.Ed.2d 864 (1984). In order to show deficient performance under the first Strickland prong, the petitioner must prove that counsel's performance "fell below an objective standard of reasonableness . . . The proper measure of attorney performance remains simply reasonableness under prevailing professional norms . . . The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised . . . The [petitioner] is also not guaranteed assistance of an attorney who will make no mistakes." Giannotti v. Warden, 26 Conn. App. 125, 130 (1991) (citations omitted; internal quotation marks omitted).

"A fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citations omitted; internal quotation marks omitted.) Minnifield v. Commissioner of Correction, 62 Conn. App. 68, 71-72 (2001).

In order to prove prejudice under the second Strickland prong, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Goodrum v. Commissioner of Correction, 63 Conn. App.

7

297, 301 (2001). Since the petitioner is required to satisfy both Strickland prongs in order to

succeed, his inability to satisfy either one makes it unnecessary for the court to address the other. "A

reviewing court can find against the petitioner on whichever ground is easier." State v. Silva, 65

Conn. App. 234, 259 (2001).

In the present case Labriola prepared for trial by reviewing the relevant police reports,

witness statements and interviewing the witnesses made known to him by the petitioner. Given the

fact that the petitioner and the victim were the only persons present during the altercation and the

petitioner admitted that there was an altercation but claimed that the victim caused her own injuries

when she attacked him, it was unnecessary for counsel to hire an investigator. Further, because the

petitioner failed to inform counsel about the existence of the potential witnesses from Daggle's,

counsel had no obligation to call such witnesses.[3] The central issue in the case was the relative

credibility of the victim and the petitioner. Labriola's trial strategy, therefore, was to impeach the

victim's credibility. Counsel thoroughly cross-examined the victim about her drug and alcohol use,

her requests for money from the petitioner and her alleged inconsistent statements. He did what he

could to attack the victim's credibility despite the fact that she had no criminal convictions to use

for impeachment purposes at the time of trial. Further, the petitioner, who discussed his proposed

---

[3]

"Defense counsel will be deemed ineffective only when it is shown that a defendant has informed his attorney of the existence of the witness and that the attorney, without a reasonable investigation and without adequate explanation, failed to call the witness at trial. The reasonableness of an investigation must be evaluated not through hindsight but from the perspective of the attorney when he was conducting it." (Internal quotation marks omitted.) Tatum v. Commissioner of Correction, 66 Conn. App. 61, 66, 783 A.2d 1151, cert. denied, 258 Conn. 937, 785 A.2d 232 (2001); see also Nieves v. Commissioner of Correction, 51 Conn. App. 615, 624, 724 A.2d 508, cert. denied, 248 Conn. 905, 731 A.2d 309 (1999).

testimony with Labriola prior to trial, forcefully told the jury that he did not intentionally assault the victim. This testimony, had it been credited by the jury, would have rebutted the victim's claims. Counsel called Vezina to testify at the petitioner's request, even though her testimony did not do much to aid the defense. Labriola refused to call Dwyer, however, because his testimony would have harmed the defense by corroborating testimony by the victim and Moffit that the petitioner was intoxicated and in possession of a liquor bottle at the time of the incident. Counsel's failure to call Dwyer was clearly a tactical decision. In short, counsel adequately investigated the state's case to the extent necessary to defend the petitioner and employed proper trail strategy in questioning witnesses for the state and the defense.

The following additional facts are found in connection with the petitioner's claim that trial counsel should have moved to dismiss the charges because the arrest warrant included insufficient probable cause. The affidavit in support of the arrest warrant was prepared by Waterbury Police Detective Jeffrey Fisher in consultation with other police officers and was admitted into evidence at the habeas trial. Fisher did not intentionally and knowingly include any false or misleading information in the arrest warrant affidavit or make any material omissions from it, nor is there evidence that any other Waterbury police officer engaged in any such misconduct. Further, Labriola did not move to dismiss the case based on a lack of probable cause in the arrest warrant because he did not see any legal basis for doing so. Absent evidence that the Waterbury police intentionally and knowingly included false or misleading information in the arrest warrant affidavit or made material omissions from it, no basis exists to claim that the warrant was illegal. Cf. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Moreover, Practice Book

Section 41-9 indicates that "[n]o defendant . . . who has been arrested pursuant to a warrant may make a motion under subdivision (5) . . . of Section 41-8." Section 41-8 (5), in turn, says that a motion to dismiss may be raised prior to trial based on "[i]nsufficiency of evidence or cause to justify the brining or continuing of such information or the placing of the defendant on a trail[.]" This means that a motion to dismiss based on a lack of probable cause in an arrest warrant is not cognizable. Thus, the petitioner's claim regarding the arrest warrant is without merit.

The petitioner also claims that counsel should have agreed to the state's oral motion for mistrial. The petitioner, however, was not prejudiced by counsel's failure to acquiesce in the state's motion for mistrial. Labriola's query about whether it was the victim's "style to get high" was insufficiently prejudicial to warrant a mistrial and prompted a curative instruction from Judge Carroll. "While the remedy of a mistrial is permitted under the rules of practice, it is not favored . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided." (Internal quotation marks omitted.) State v. Correa, 241 Conn. 322, 350, 696 A.2d 944 (1997). Since the trial court gave a curative instruction in response to Labriola's comment and mistrial motions are disfavored, it is unlikely that Judge Carroll would have granted the state's motion even if Labriola had joined it.

The petitioner claims in addition that Labriola failed to move for a judgment of acquittal[4] at any time during the trial pursuant to Practice Book Section 42-40 et seq. It is unlikely, however, that Judge Carroll would have granted such at any time during the proceedings. The standard of

---

[4]

In his petition, the petitioner claims that trial counsel failed to make a "motion to dismiss" at the end of the state's case and the end of all the evidence. The court presumes that the petitioner is referring to a motion for judgment of acquittal, not a pre-trial motion to dismiss.

review regarding the denial of a motion for a judgment of acquittal challenging the sufficiency of the evidence has been settled by judicial decision. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) State v. Green, 261 Conn. 653, 667, 804 A.2d 810 (2002). In viewing the victim's testimony during the state's case-in-chief about the petitioner's conduct at the time of the crime and the defendant's admission during the defense case that he had indeed been in her home and involved in an altercation with her, there was sufficient evidence for the trial judge to allow the case to go to the jury for their consideration. There simply is no reasonable probability that the result of the trial would have been different had trial counsel moved for a judgment of acquittal after the state's case or at the close of all the evidence.

The petitioner also claims that counsel performed ineffectively when he failed to advise him regarding plea bargain offers,  failed to correct an alleged error in the psi regarding his record for drug possession and failed to inform him regarding his right to sentence review. The evidence, however, is to the contrary. Labriola tried to get the state to offer the petitioner a misdemeanor plea with no jail time, but the state refused. The petitioner was unwilling to accept any negotiated plea that involved jail time and hence, opted to exercise his right to a jury trial. The court notes that the petitioner, who spoke at the sentencing, said nothing after Judge Carroll referred to his drug conviction. The court also notes that there is no credible evidence that the narcotics conviction listed in the petitioner's psi is factually inaccurate. Finally, trial counsel did in fact speak with the

11

petitioner on the day of sentencing about his right to sentence review and supplied him with an application form, which the petitioner filed too late. The petitioner has failed to prove that his attorney performed incompetently in regard to plea negotiations, the psi or the petitioner's sentence review application. He has also failed to prove that but for any deficient performance by counsel in connection with any of these matters, it is reasonably likely that the outcome of his trial would have been different.

The first count of the petition is dismissed because the petitioner has failed to prove either Strickland prong by a preponderance of the evidence.

## B.

In the second count of the petition, the petitioner claims that Labriola performed deficiently by failing to except to the court's failure to give a unanimity charge with respect to the elements of burglary in the second degree.[5] The petitioner asserts the court's instruction should have expressly told the jury that it had to be unanimous in finding the petitioner guilty of unlawfully entering or unlawfully remaining in the victim's apartment. He claims that otherwise, the jury was free to convict him without unanimously agreeing on an essential element of the crime charged. This claim, however, was specifically addressed in State v. Austin, supra, when the court said "it is not reversible error for the trial court [to charge] the jury on a factually unsupported basis of criminal liability provided that, in addition to that instruction, the trial court instructs the jury on a factually supported basis . . . Here there was ample evidence for the jury to have concluded that the

---

[5] General Statutes § 53a-102 (a) provides: "A person is guilty of burglary in the second degree when he enters or remains unlawfully at a dwelling at night with intent to commit a crime therein."

[petitioner], by the use of force, unlawfully entered the victim's apartment. Alternatively, there was ample evidence to show that the [petitioner] refused to leave and unlawfully remained in the apartment. The [petitioner's] first claim must therefore fail." Id., 308-309. Because the Appellate Court has already addressed the petitioner's claim regarding the burglary instruction, he is barred from litigating it in his habeas case by the judicial doctrine of res judicata which provides that "a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action [between the same parties] on the same claim." (Internal quotation marks omitted.) Brown v. Commissioner of Correction, 44 Conn. App. 746, 749, 692 A.2d 1285 (1997) . . . "The judicial [doctrine] of res judicata . . . [is] based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate . . . [W]here a party has fully and fairly litigated his claims, he may be barred from future actions on matters not raised in the prior proceeding." (Internal quotation marks omitted.) Id. Since the petitioner had a full and fair opportunity to litigate his claim before the Appellate Court and did so, he cannot reassert it in his habeas petition. Count two of the petition is dismissed.

The second count of the petition also includes a claim by the petitioner that his trial counsel performed ineffectively by failing to except to an allegedly improper jury instruction regarding the presumption of innocence. Specifically, he claims that the request to charge[6] used improper language adopted by the trial court in its charge to the jury. Specifically, the court told the jury that "[i]t is the sworn duty of the courts and jurors to safeguard the rights of persons charged with crime

---

[6]

The request to charge, dated March 12, 1998 and submitted by Labriola during the criminal trial, was admitted as an exhibit in the habeas trial.

13

by respecting the presumption of innocence, which the law gives every person so charged. But the law is made to protect society and innocent persons, and not to protect guilty ones." The petitioner accurately claims that the Connecticut Supreme Court prohibited the use of this instructional language by trial courts in State v. Schiappa, 248 Conn. 132, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S.Ct. 152, 145 L.Ed.2d 129 (1999). As noted however in State v. Austin, supra, Schiappa does not help the petitioner because it was decided one year after the petitioner trial and was prospective in nature. Id., 310 n.5. Because it was proper to use the language at issue at the time the disputed instruction was given, counsel did not perform incompetently by failing to except to it. "[T]he failure to pursue unmeritorious claims cannot be considered conduct falling below the level of reasonably competent representation." See Sekou v. Warden, 216 Conn. 678, 690 (1990). Hence, the petitioner's claim that counsel was ineffective by failing to except to the disputed language regarding the presumption of innocence is unavailing.

C.

In the third count of the petition, the petitioner alleges that his counsel's deficient performance deprived him of the due process of law guaranteed him by the fourteenth amendment of the United States constitution and by article first, section 8 of the Connecticut constitution. The court rejects the fourteenth amendment due process claim because it lacks merit and refuses to address the state constitutional claim because the petitioner did not adequately brief that claim.

The amended petition makes it plain that the petitioner's fourteenth amendment due process claim is linked to his claim of ineffective assistance of counsel[7]. The Appellate Court has held that

---

[7]

In count three of the amended petition the first two counts, including the claim of ineffective

14

"where the petitioner's claim of a violation of due process is so inextricably bound up in the issue of the effectiveness of his trial [or appellate] counsel . . . a separate claim of a violation of the right to due process is not required . . . A habeas court, need not, therefore, separately address due process claims subsumed by claims of ineffective assistance of counsel." (Internal citations omitted). See Evans v. Commissioner, 37 Conn. App. 672, 693 (1995). Since the court has determined that the petitioner has failed to prove his ineffective assistance claim and such claim is "bound up" with his fourteenth amendment due process claim, the latter claim is without merit and there is no need to address it separately.

The court refuses to address the petitioner's state constitutional due process claim because he has abandoned the issue by failing to brief it. The courts "are not required to review issues that have been improperly presented . . . through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Citations omitted; internal quotation marks omitted.) Mercer v. Commissioner of Correction, 49 Conn. App. 819, 820-21 n. 1, 717 A.2d 763, cert. denied, 247 Conn. 920, 722 A.2d 810 (1998).

III

CONCLUSION

The petitioner has failed to prove by a preponderance of the evidence that his trial counsel performed deficiently or that but for any such deficient performance, it is reasonably likely that the

---

assistance of trial counsel, are incorporated by reference.

15

outcome of his criminal trial would have been different.  Further, the judicial doctrine of res judicata

bars the petitioner from relitigating his claim regarding the second degree burglary instruction and

counsel was not required to except to the presumption of innocence instruction because the language

used was proper at the time it was given.  Finally, the court finds that the petitioner's federal due

process claim lacks merit and that he has abandoned his state constitutional due process claim.

Accordingly, the amended petition is dismissed in its entirety.

The Court

White

White, J.

Copies mailed/given to:

Henry Austin (w/pet. cert. + fee waiver)
Atty. Tsimbidaros (w/pet. cert. + fee waiver)
Atty. Mengacci
SASA Branno Kelly Austin
Reporter of Judicial Decisions
Judge White
        11/24/03    T. Biniars
                    Court Officer

16

**Re: CV00 0002823 S    AUSTIN, HENRY  V. WARDEN**

Order

The court's memorandum of decision in Henry Austin v. Commissioner of Correction, Judicial District of Tolland at Rockville, Docket No. CV98-0002823 (November 24, 2003) is modified as follows.  The court now finds that the petitioner's trial counsel improperly failed to file an application for sentence review on the petitioner's behalf pursuant to General Statutes Section 51-195 and that such failure prejudiced the petitioner's statutory right to have his sentence reviewed.  Therefore, the court hereby restores the petitioner's statutory right to apply for sentence review and orders that the statutory thirty-day time limit to apply for such review shall commence simultaneously with the commencement of his right to appeal the dismissal the remaining claims in his habeas corpus petition.

The Court

White, J.

1/26/04

Copies mailed
01/30/04 to
All parties of
record
T. P

14550
ShPMD